**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MIKE HOLLER** | : | **Case No:** _____ |
| | : | |
| Plaintiff, | : | **J**u**dge:** _____ |
| | : | |
| vs. | : | |
| | : | |
| **VILLAGE OF ENON, OHIO,** | : | |
| 363 E Main Street | : | |
| Enon, Ohio 45323 | : | |
| | : | |
| and, | ; | |
| | : | |
| **JOHN and KAREN DOES,** | : | |
| (In official and individual capacities) | : | |
| 363 E Main Street | : | |
| Enon, Ohio 45323 | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT WITH JURY DEMAND**

Plaintiff Mike Holler states the following for his Complaint against Defendants:

**INTRODUCTION**

1.  This case is about a police chief whose own Village exposed the home address that

    Ohio law required it to protect. Plaintiff Mike Holler is the former Police Chief of the

    Village of Enon Police Department. He spent his career in law enforcement, which

    made the privacy of his home address more than a preference. It was a matter of

    personal safety. Ohio law recognizes that peace officers and qualifying former peace

    officers face unique safety risks. For that reason, Ohio law removes designated public

1

service worker residential and familial information from public records and requires public offices to protect personal information in their systems.

2. Defendants did the opposite. They released Holler's personnel file in response to public records requests with his home address still visible. The first release may be described by Defendants as a redaction problem. But this case is mostly about what happened next. After the first disclosure, Holler immediately warned Defendants that their Adobe black-box redactions were not real redactions. The boxes could be removed, copied around, or otherwise bypassed. His home address remained exposed. Defendants therefore had actual notice. They knew their process did not protect Holler. They knew the file contained protected residential information. They knew further release would put the same address back into public hands.

3. Despite that notice, Defendants released the file again. This time, they used marker-style redactions. Those redactions were also ineffective. The underlying address remained visible through the marker. The second disclosure is the central fact in this case. It was not a learning curve. It was not a one-time technical slip. It was a repeated disclosure after notice, after objection, and after Defendants had been told exactly what was wrong. Defendants still have not fixed the problem. They have not retrieved the bad productions. They have not warned prior requestors that the productions contained protected information. They have not adopted reliable redaction procedures. They have not protected Holler from further disclosure.

4. Holler brings this case to recover for the loss of privacy, fear for his safety, emotional distress, reputational harm, and the violation of his federal and Ohio statutory rights.

2

## PARTIES

5.  Plaintiff Mike Holler is a resident of Ohio. Because this case concerns the unlawful exposure of his home address, the Complaint does not publish his street address. His address is known to counsel and can be disclosed under appropriate protective conditions if required.

6.  Holler is the former Police Chief of the Village of Enon Police Department.

7.  Defendant Village of Enon, Ohio is an Ohio municipal corporation located in Clark County, Ohio.

8.  The Village of Enon may be sued in its own name and is responsible for the actions of its officials, public records personnel, records custodians, policymakers, and employees who handled, reviewed, approved, redacted, and released Holler's personnel file.

9.  The Village of Enon Police Department is located at 363 E Main Street, Enon, Ohio 45323, and is a department, agency, or instrumentality of the Village of Enon.

10. Defendants John and Karen Does are Village officials, employees, records custodians, administrators, supervisors, legal reviewers, public records personnel, or other agents whose identities are presently unknown.

11. The Doe Defendants participated in, approved, directed, caused, repeated, or failed to stop the disclosure of Holler's protected personal information.

12. The Doe Defendants are sued in their individual capacities for damages and in their official capacities for prospective injunctive relief.

13. At all times relevant to this Complaint, Defendants acted under color of state law.

3

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over Holler's federal claims under 28 U.S.C. Section 1331 because this action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

15. This Court has supplemental jurisdiction over related Ohio-law claims under 28 U.S.C. Section 1367 because those claims arise from the same facts and form part of the same case or controversy.

16. Venue is proper in this Court under 28 U.S.C. Section 1391 because a substantial part of the events occurred in Clark County, Ohio, which is within this District and Division.

17. The Village of Enon resides in this District for venue purposes.

**FACTUAL ALLEGATIONS**

18. Holler served as Police Chief for the Village of Enon Police Department.

19. As Police Chief, Holler was a peace officer and a designated public service worker under Ohio law.

20. Because of his law enforcement service, Holler faced risks not faced by ordinary public employees.

21. Peace officers make arrests, investigate crimes, testify in criminal cases, discipline subordinates, respond to emergencies, and interact with people who may later become hostile toward them.

22. For that reason, a peace officer's home address is sensitive personal information.

23. Ohio law recognizes that point. Ohio Revised Code Section 149.43 excludes designated public service worker residential and familial information from the definition of public record.

24. That protected information includes the address of the actual personal residence of a designated public service worker.

25. Ohio Revised Code Section 149.45 also creates a redaction process for the address of a designated public service worker or qualifying former designated public service worker when the address appears in records made available to the public on the internet.

26. Ohio Revised Code Section 1347.05 requires local agencies maintaining personal information systems to take reasonable precautions to protect personal information from unauthorized modification, destruction, use, or disclosure.

27. Ohio Revised Code Section 1347.10 provides a civil remedy when personal information maintained in a personal information system is intentionally used or disclosed in a manner prohibited by law.

28. Upon information and belief, Defendants maintained Holler's personnel file in a personal information system within the meaning of Ohio Revised Code Chapter 1347.

29. Upon information and belief, the file was organized, stored, maintained, and retrievable by Holler's name or other identifier.

30. Upon information and belief, the file contained Holler's home address and other personally identifying information.

31. Village officials pressured Holler to resign from his position under unfavorable terms.

32. Facing termination, Holler entered into a separation agreement with the Village.

33. After Holler's separation, the Village received one or more public records requests for Holler's personnel file.

34. Upon information and belief, the Village knew the file contained Holler's home address before the file was released.

35. Upon information and belief, the Village knew or should have known that Holler had served as Police Chief and that his residential information was protected by Ohio law.

36. Upon information and belief, the Village had a public records process that routed requests to records personnel, supervisors, legal reviewers, or officials with authority to decide what would be produced and how it would be redacted.

37. Upon information and belief, the people who approved the release had final authority for the Village over this public records production, or their decision was accepted and implemented as the Village's final decision.

38. The Village first attempted to redact Holler's home address by placing black boxes over the address in Adobe or similar software.

39. Those black boxes were not real redactions.

40. The underlying address remained in the file.

41. The boxes could be removed, bypassed, copied around, searched around, or otherwise defeated.

42. As a result, Holler's home address remained plainly available to anyone who opened, inspected, copied, searched, or manipulated the file.

43. Holler promptly notified the Village that the first redaction failed.

44. Holler told the Village that his home address remained visible or accessible.

45. Holler requested immediate corrective action.

6

46. That warning gave Defendants actual notice that their public records process was exposing protected information.

47. That warning also gave Defendants actual notice that any further release of the same file would require a real redaction process.

48. At that point, Defendants had several obvious options.

49. They could stop production until a secure redaction was completed.

50. They could use proper redaction software that permanently removed the underlying text.

51. They could print and rescan a properly redacted copy after verifying the address could not be read.

52. They could ask counsel to review the file before release.

53. They could withhold the protected address from production.

54. They could contact prior requestors and tell them the prior production contained protected information that should not have been released.

55. They could adopt a written procedure for redacting peace officer residential information.

56. They did not take those steps in any meaningful way.

57. Instead, Defendants released the file again.

58. The second release is the key event in this case.

59. The second release happened after Holler warned Defendants that the first redaction failed.

60. The second release happened after Defendants knew that Holler's protected home address was in the file.

7

61. The second release happened after Defendants knew that a superficial redaction would not protect Holler.

62. For the second release, Defendants used marker-style redactions or a similar visual overlay.

63. That method also failed.

64. The underlying address remained visible through the marker.

65. Anyone who reviewed the second production could still see Holler's home address.

66. Thus, the second disclosure was not merely a repeat of the first problem. It was the same privacy violation after direct notice.

67. Upon information and belief, the second disclosure was made by Village officials or employees responsible for public records production.

68. Upon information and belief, those officials acted with knowledge that the first redaction had failed.

69. Upon information and belief, those officials acted with knowledge that Holler objected to the disclosure and wanted the protected information removed.

70. Upon information and belief, those officials chose to release the file anyway.

71. Upon information and belief, Defendants did not test the second redaction before release to confirm that the address could not be seen, searched, copied, extracted, or recovered.

72. Upon information and belief, Defendants did not use a secure redaction protocol for the second release.

73. Upon information and belief, Defendants did not require a second-level review before the second release.

74. Upon information and belief, Defendants did not maintain any adequate checklist for peace officer residential information.

75. Upon information and belief, Defendants did not train the records personnel involved in the second release on how to perform true redactions.

76. Upon information and belief, Defendants did not train the records personnel involved in the second release on the protections for designated public service worker residential and familial information.

77. Upon information and belief, Defendants did not discipline, retrain, or correct the officials responsible after Holler warned them about the first release.

78. Upon information and belief, Defendants did not notify prior requestors that the records they received contained protected information.

79. Upon information and belief, Defendants did not ask prior requestors to destroy or return the improperly redacted copies.

80. Upon information and belief, Defendants did not track all persons who received the defective productions.

81. Upon information and belief, Holler's protected personal information remains exposed or at risk of further disclosure.

82. The second disclosure caused Holler to reasonably fear for his safety.

83. The second disclosure deprived Holler of control over information that Ohio law required Defendants to protect.

84. The second disclosure caused Holler emotional distress, humiliation, reputational harm, and a loss of trust in the Village.

85. The second disclosure was especially harmful because Holler had already asked Defendants to stop the exposure and fix the problem.

9

86. Defendants' response communicated that Holler's safety and statutory rights were less important than fast or convenient production.

87. This was not an ordinary public records dispute.

88. This was not a case where a requester was denied records.

89. This was a case where the government released information the law required it to protect, then released it again after being told the first release failed.

90. The Village is responsible for the public records process that produced Holler's file.

91. Upon information and belief, the Village had final policymakers, records custodians, legal reviewers, supervisors, or other officials who were responsible for deciding whether personnel files would be released and how protected information would be redacted.

92. Upon information and belief, the decision to release Holler's file the first time was made or approved by a person with final authority over that records production.

93. Upon information and belief, the decision to release Holler's file the second time was also made or approved by a person with final authority over that records production.

94. Upon information and belief, once those officials approved release, no higher Village official reviewed, stopped, or corrected the production.

95. Upon information and belief, the second disclosure therefore reflected the Village's own final decision, not a random act by a lower-level employee.

96. Upon information and belief, the Village maintained a policy, practice, or custom of responding to public records requests by using visual redactions that did not permanently remove protected information from electronic files.

10

97. Upon information and belief, the Village maintained a policy, practice, or custom of releasing personnel files without a reliable review for designated public service worker residential and familial information.

98. Upon information and belief, the Village maintained a policy, practice, or custom of leaving records staff without adequate training on electronic redaction.

99. Upon information and belief, the Village maintained a policy, practice, or custom of leaving records staff without adequate training on the protections for peace officers and qualifying former peace officers.

100. Upon information and belief, the Village failed to implement a secure redaction procedure even after Holler warned that the first production exposed his home address.

101. Upon information and belief, the Village failed to supervise the second release even though the need for supervision was obvious after the first release failed.

102. Upon information and belief, the Village ratified or approved the defective process by continuing to use it after actual notice.

103. Upon information and belief, the Village had an obvious need to train public records personnel on electronic redactions because public offices routinely release PDF files and personnel files in response to public records requests.

104. Upon information and belief, the Village had an obvious need to train public records personnel on peace officer address protections because the Village employed police officers and maintained police personnel files.

105. Upon information and belief, the Village had an obvious need to adopt a process for former police chiefs because a former chief's personnel file is likely to be requested by the public and likely to contain protected residential information.

106. Upon information and belief, the Village's failures were the moving force behind the second disclosure.

107. Had the Village used a proper redaction policy, proper training, proper review, or proper supervision after the first warning, the second disclosure would not have happened.

108. Had the Village treated Holler's warning seriously, Holler's home address would not have been released again.

109. The Village's own records process caused the constitutional and statutory injuries described in this Complaint.

## CAUSES OF ACTION

### COUNT I
### Fourteenth Amendment - Procedural Due Process
### 42 U.S.C. Section 1983
### Against All Defendants; Against the Village under Monell

110. Holler realleges all prior paragraphs.

111. The Fourteenth Amendment prohibits state actors from depriving a person of protected liberty or property interests without due process of law.

112. Ohio law gave Holler a protected entitlement to the confidentiality of his residential information as a peace officer, former Police Chief, and designated public service worker or qualifying former designated public service worker.

113. That entitlement was not merely a preference. It arose from mandatory Ohio statutes that restrict disclosure of designated public service worker residential and familial information and require local agencies to protect personal information systems.

114. The release of Holler's home address destroyed that entitlement because once the address was disclosed, confidentiality could not be restored.

115. Before the first disclosure, Defendants did not provide Holler a meaningful opportunity to object to the release of his home address.

116. Before the second disclosure, Defendants had actual notice that Holler objected and that the first redaction failed.

117. Despite that notice, Defendants released the file again without giving Holler a meaningful chance to stop the second disclosure, seek review, or confirm that real redactions had been completed.

118. The risk of error was obvious because the first redaction had already failed.

119. The value of additional safeguards was also obvious because a short pause, a true redaction, a second-level review, or a meaningful chance to object would have prevented the second disclosure.

120. Defendants' conduct deprived Holler of due process.

121. The Village is liable because the disclosure was caused by its final public records decision, policies, customs, practices, training failures, supervision failures, and ratification described above.

122. Holler suffered damages and is entitled to compensatory damages, nominal damages, punitive damages against the individual Defendants, attorney fees, costs, and appropriate injunctive relief.

## COUNT II
### Fourteenth Amendment - Substantive Due Process and Informational Privacy
### 42 U.S.C. Section 1983
### Against All Defendants; Against the Village under Monell

123. Holler realleges all prior paragraphs.

124. The Fourteenth Amendment protects against government disclosure of certain highly personal information.

125. A police officer's home address is highly personal information when disclosure creates a real risk to the officer and the officer's family.

126. Holler's home address was not routine public information. It was residential information of a former Police Chief whose law enforcement work made disclosure dangerous.

127. Defendants had no legitimate reason to release Holler's home address.

128. Ohio law gave Defendants every reason to protect it.

129. The first disclosure exposed Holler's home address through fake or ineffective redactions.

130. The second disclosure was more serious because Defendants had already been warned.

131. After that warning, no reasonable public official could believe that using another visual overlay without verifying the redaction was enough.

132. Defendants' repeated release of Holler's home address was arbitrary, unjustified, and conscience-shocking under the circumstances.

133. Defendants violated Holler's constitutional right to informational privacy.

134. The Village is liable because the disclosure was caused by its final public records decision, policies, customs, practices, training failures, supervision failures, and ratification described above.

135. Holler suffered damages and is entitled to compensatory damages, nominal damages, punitive damages against the individual Defendants, attorney fees, costs, and appropriate injunctive relief.

**COUNT III**
**Monell Liability - Official Decision, Policy, Practice, Custom, Training, Supervision, and Ratification**
**42 U.S.C. Section 1983**
**Against the Village of Enon**

136. Holler realleges all prior paragraphs.

137. The Village is a municipal corporation subject to liability under 42 U.S.C. Section 1983 when its own policy, custom, practice, final decision, or failure to train or supervise causes a constitutional violation.

138. The Village is not sued under a theory that it is automatically liable for every act of an employee.

139. The Village is sued because the disclosure of Holler's home address was caused by the Village's own records process and final release decisions.

140. Upon information and belief, the officials who reviewed, redacted, approved, or released Holler's file had final authority for that production or were treated by the Village as having final authority.

141. Upon information and belief, the second release was an official municipal act because the file was released through the Village's public records process after review or approval by the responsible officials.

142. Upon information and belief, the Village maintained a policy, practice, or custom of using superficial visual redactions rather than true electronic redactions.

143. Upon information and belief, the Village maintained a policy, practice, or custom of releasing police personnel files without first removing protected residential information.

144. Upon information and belief, the Village failed to train public records personnel on how to remove underlying text from PDF files before release.

145. Upon information and belief, the Village failed to train public records personnel on Ohio statutes protecting peace officer and former peace officer residential information.

146. Upon information and belief, the Village failed to supervise the second release despite actual notice that the first release exposed Holler's address.

147. Upon information and belief, the Village ratified the defective process by using another ineffective redaction after being warned that the first redaction failed.

148. Each of these municipal acts and omissions caused Holler's injuries.

149. The Village's conduct was the moving force behind the violation of Holler's constitutional rights.

150. Holler is entitled to compensatory damages, nominal damages, attorney fees, costs, and appropriate injunctive relief against the Village.

**COUNT IV**
**Wrongful Disclosure of Personal Information**
**Ohio Revised Code Section 1347.10**
**Against All Defendants**

151.  Holler realleges all prior paragraphs.

152.  Defendants maintained Holler's personal information in a personal information system within the meaning of Ohio Revised Code Chapter 1347.

153.  Holler's home address and identifying information described him and were retrievable by his name or other identifier.

154.  Ohio Revised Code Section 1347.05 required the Village to take reasonable precautions to protect personal information in its systems from unauthorized use or disclosure.

155.  Ohio Revised Code Section 1347.10 allows a person harmed by personal information maintained in a personal information system to recover damages when the information is intentionally used or disclosed in a manner prohibited by law.

156.  Defendants intentionally disclosed Holler's personnel file in response to public records requests.

157.  That disclosure included Holler's protected home address.

158.  The disclosure was prohibited by Ohio law, including the protections for designated public service worker residential and familial information and the duties imposed on local agencies maintaining personal information systems.

159.  The second disclosure independently violated Ohio Revised Code Section 1347.10 because it occurred after Defendants had actual notice that the redaction process failed and that Holler objected to the disclosure.

160. Defendants' conduct was done intentionally, knowingly, in bad faith, with malicious purpose, or in a wanton or reckless manner.

161. As a direct and proximate result, Holler suffered harm.

162. Holler is entitled to damages, injunctive relief, costs, and all relief available under Ohio Revised Code Section 1347.10.

**COUNT V**
**Invasion of Privacy - Public Disclosure of Private Facts**
**Against the Individual Defendants**

163. Holler realleges all prior paragraphs.

164. Ohio law recognizes a claim for invasion of privacy when a defendant gives publicity to private facts that would be highly offensive to a reasonable person and that are not of legitimate public concern in the form disclosed.

165. Holler's actual home address was a private fact because he was a former Police Chief and peace officer whose residential information is protected by Ohio law.

166. The public release of a former Police Chief's home address would be highly offensive to a reasonable person.

167. There was no legitimate public interest in disclosing Holler's actual home address.

168. The first disclosure publicly exposed that information.

169. The second disclosure publicly exposed it again after Holler warned Defendants that the first production failed.

170. The second disclosure supports a finding that the individual Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

171. As a direct and proximate result, Holler suffered loss of privacy, fear for his safety, emotional distress, reputational harm, and other damages.

172. Holler is entitled to compensatory damages, punitive damages, costs, and all other relief allowed by law against the individual Defendants.

**COUNT VI**
**Injunctive Relief**
**Against the Village and Official-Capacity Defendants**

173. Holler realleges all prior paragraphs.

174. Defendants' conduct presents an ongoing risk of further disclosure of Holler's protected information.

175. Holler's home address has already been released at least twice.

176. The second disclosure shows that Defendants will not reliably protect the information without Court intervention.

177. Ohio Revised Code Section 1347.10 authorizes injunctive relief to ensure compliance with Ohio Revised Code Chapter 1347 and to prevent practices that violate that chapter.

178. Holler requests an injunction requiring Defendants to cease disclosing his home address and other protected residential information.

179. Holler requests an injunction requiring Defendants to remove or securely redact his home address from all records made available to the public or produced in response to future requests.

180. Holler requests an injunction requiring Defendants to use true electronic redactions that permanently remove underlying text and metadata.

181. Holler requests an injunction requiring Defendants to verify, before any future release, that Holler's home address cannot be seen, searched, copied, extracted, recovered, or viewed through any overlay.

182. Holler requests an injunction requiring Defendants to notify prior requestors that prior productions were improperly redacted and contained protected information.

183. Holler requests an injunction requiring Defendants to request that prior requestors destroy or return improperly redacted copies containing Holler's home address.

184. Holler requests an injunction requiring Defendants to adopt written procedures for handling designated public service worker residential and familial information.

185. Holler requests an injunction requiring Defendants to train public records personnel on secure redaction and Ohio laws protecting peace officer residential information.

186. Without injunctive relief, Holler faces a continuing risk that his home address will remain exposed or be released again.

**DEMAND FOR RELIEF**

WHEREFORE, Holler respectfully asks this Court to enter judgment in his favor and award the following relief:

a. Compensatory damages;

b. Nominal damages;

c. Punitive damages against the individual Defendants in their individual capacities;

d. Injunctive relief requiring Defendants to stop further disclosure and correct the prior defective productions;

e. Pre- and post-judgment interest as allowed by law;

f. Attorney fees under 42 U.S.C. Section 1988 and any other applicable law;

g. Costs and expenses; and

h. Any other relief allowed by law or equity.

Respectfully Submitted,

/s/ Robert Thompson
**Robert Thompson, Esq.** (OH: 98126)
THOMPSON LEGAL LLC
250 E 5th St., 15th Floor
Cincinnati, Ohio 45202
P: 513-780-5985
F: 513-780-5988
robert@rthompsonlegal.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/ Robert Thompson
Robert Thompson, Esq. (OH: 98126)